IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOUIS GEORGE DOVER, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 21-2425 |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER M. TALLARICO; KYLE S. LASKOSKIE, State Trooper; FRANK GAWEL, State Trooper; and JOHN DOE SHIFT SUPERVISOR, Commander Third Shift, Lancaster Barracks, Pa. State Police, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Smith, J.                                                                                                                June 11, 2021

The *pro se* plaintiff has sought leave to proceed *in forma pauperis* in this civil action where he complains of various constitutional violations relating to a stop of his vehicle and his subsequent arrest in February 2019 and his eventual conviction after he entered a negotiated guilty plea in April 2021. He has sued (1) the two Pennsylvania State Troopers who allegedly illegally stopped his vehicle, unlawfully arrested him and filed a criminal complaint against him, and failed to return property seized from him, (2) a supervisor who was at the State Police barracks during the plaintiff's processing after his arrest and allegedly failed to properly supervise those troopers who handled his processing at the barracks, and (3) a public defender who represented him at one point during his criminal proceedings and who allegedly failed to properly represent him during those proceedings.

As discussed below, the plaintiff has demonstrated that he cannot prepay the fee and, as such, the court will grant him leave to proceed *in forma pauperis*. As for his claims, the court dismisses the operative complaint in its entirety under 28 U.S.C. § 1915(e)(2)(B)(ii) because the

plaintiff has failed to state a claim. More specifically, many of the plaintiff's claims under 42 U.S.C. § 1983 are time-barred because his arrest occurred more than two years prior to him filing a complaint in this case. In addition, the plaintiff cannot assert a section 1983 claim against his former public defender because, *inter alia*, a public defender does not act under "color of state law" for purposes of section 1983. Further, to the extent that he asserts a malicious prosecution claim, his claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), insofar as his conviction has not been overturned or otherwise invalidated. Finally, the plaintiff's claims regarding the failure to return property seized during his arrest are dismissed because adequate state post-deprivation remedies are available, and he has not yet availed himself of those remedies.

## I. ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiff, Louis George Dover ("Dover"), commenced this action by filing an application for leave to proceed *in forma pauperis* (the "IFP Application") (Doc. No. 3), a complaint (Doc. No. 1), and an amended complaint (Doc. No. 4), which the clerk of court docketed on May 26, 2021. Dover then filed a second amended complaint ("SAC"), which the clerk of court docketed on June 8, 2021. Doc. No. 5. In the SAC, Dover names as defendants: Christopher Tallarico ("Attorney Tallarico"), a public defender; Pennsylvania State Troopers, Kyle Laskoskie and Frank Gawel; and "John Doe Shift Supervisor, Commander Third Shift, Lancaster Barracks Pa. State Police." *See* 2d Am. Compl. at ECF pp. 1, 14, Doc. No. 5.

In the SAC, Dover alleges that Troopers Laskoskie and Gawel stopped his vehicle on February 15, 2019, "for a third brake light infraction." *Id.* at ECF p. 2. He contends that the troopers "applied a plain smell doctrine, alleging a smell of marijuana and [then] trashed the vehicle looking for contraband." *Id.* Dover denies that such a smell of marijuana existed, and he claims that the stop was pretextual as the troopers already knew him. *Id.* Dover also claims that during this initial

search of the vehicle, Trooper Gawel "powered on" Dover's cellphone and "scrolled through [the] cellphone in clear sight. [He] left [the] phone on [the] vehicle seat where it was unavailable some 10 days later." *Id.* The troopers also had Dover perform a field sobriety test, which they said he failed. *Id.* The troopers then took Dover to a hospital "where a blood sample was taken[,] and the allegation of marijuana was made by hospital staff." *Id.* Dover further alleges that his vehicle was towed and was searched. *Id.* at ECF p. 3.

Based on the alleged illegal search, the troopers included five charges relating to possession of drug paraphernalia, possession of marijuana, possession of a "firearm, ammo etc.," and driving under the influence.[1] *Id.* at ECF p. 2. According to Dover, the troopers eventually transported him to the Pennsylvania State Police barracks, where Trooper Gawel illegally seized his "then current act [sic] 235 license, . . . then current New Hampshire concealed carry license and . . . expired Florida concealed carry license." *Id.* at ECF p. 3. Trooper Laskoskie also seized his "walther[,] an expensive German weapon." *Id.* None of these items were ever returned to Dover. *Id.*

Dover contends that Trooper Laskoskie "falsified the gun charge[,] fitting the law to the facts" and that both troopers "withheld exculpatory information from the police complaint." *Id.* He also asserts that Troopers Laskoskie and Gawel, as well as other State Troopers, acted in an unreasonable, incompetent, and hostile manner. *Id.* He further alleges that "during [his] processing and time at the barracks their [sic] had to have been someone in charge and command with final say on certain matters who should have been aware of what his or her subordinates were doing." *Id.* at ECF p. 4. He claims that the John Doe defendant failed to act to protect Dover's constitutional rights. *Id.*

---

[1] Dover alleges that the complaint originally included a "felony gun charge," which, to the best of his knowledge, was later reduced to a misdemeanor and then dropped altogether. 2d Am. Compl. at ECF p. 2.

3

Regarding the charges arising from the search of his vehicle, Dover alleges that he spent a week in jail, from February 15, 2019, until February 22, 2019. *Id.* at ECF p. 3. At some point, Attorney Tallarico was assigned as a public defender for Dover's case and, according to Dover, presented him with an ARD offer in July 2019.[2] *Id.* at ECF p. 5. Dover then "faxed the completed application on around" July 11, 2019. *Id.*

Although Dover was admitted at some point to the ARD program, he left the program on or about July 28, 2020. *Id.* Around this same time, another public defender, Gabriel Griffith ("Attorney Griffith"), was assigned to represent Dover in his criminal case.[3] *Id.*

Dover asserts that he raised concerns with each of his attorneys regarding the proper defense of his case, for which he claims he had "defenses to the plain smell doctrine and . . . the case came down to certain credibility issues." *Id.* at ECF pp. 5–7. He was also concerned because there "had been no active discovery, no suppression hearing, no motions, [and] nothing introduced on our side as evidence[,] etc."[4] *Id.* at ECF p. 5. Attorney Griffith represented Dover "until the case closed on [April 16, 2021,] with a plea deal of marijuana dui and a summary ticketing offense." *Id.*

Dover claims that on April 15, 2021, Attorney Griffith informed him that on the following day (the same day as Dover's plea), he was going to review dashboard camera footage that had just been made available, even though it was 26 months after Dover's arrest. *Id.* at ECF p. 6. Dover states that he had to be in court by 1 p.m. (seemingly for the entry of his plea) on April 16, 2021,

---

[2] ARD refers to "Accelerated Rehabilitative Disposition," which is a program that "permits expungement of the criminal record upon successful completion of a probationary term." *Gilles v. Davis*, 427 F.3d 197, 202 (3d Cir. 2005).
[3] Attorney Griffith is not a named defendant in this action.
[4] Dover asserts that "[b]oth public defenders reminded [him] that [he] dropped out of [ARD] and [he] was to blame." 2d Am. Compl. at ECF p. 5.

and he apparently did not attend the viewing of the footage, so he does not know if the footage was there. *Id.*

Both public defenders apparently told Dover that they did not make any mistakes in his case, and he was to blame for dropping out of ARD, despite it being his "legal right" to drop out. *Id.* at ECF pp. 6, 7. Dover also claims that "[d]uring the entire legal process both attorneys covered for each other and the Pa.[ S]tate [P]olice, acting more [as] an adversary than a[n] advocate." *Id.* at ECF p. 7. He believes that they also failed to disclose (unidentified) material facts to him and their "lack of effort and silence" strengthened the government's case against him. *Id.* at ECF p. 6. This lack of effort "foreclosed and weakened" Dover's position, so Dover "felt there was no viable option other than a plea." *Id.* Dover "did not . . . raise the issue of inadequate counsel at trial showing a lack of knowledge and demonstrating naivete." *Id.*

Based on the allegations and other portions of the SAC, the court interprets the SAC as raising several causes of action against Troopers Laskoskie and Gawel pertaining to the allegedly false arrest and illegal searches and seizures that occurred on February 15, 2019, as well as claims of malicious prosecution. *Id.* at ECF pp. 8–10. The SAC also suggests that Troopers Laskoskie and Gawel violated Dover's rights by seizing his personal property and not returning it to him. *Id.* at ECF p. 3. In addition, Dover brings a claim against the fictious defendant, John Doe, for his actions as a supervisor while Dover was detained at the Lancaster State Police barracks. *Id.* at ECF pp. 4, 11. Dover also presents claims against Attorney Tallarico for his representation of Dover and his alleged conspiracy with Troopers Laskoskie and Gawel. *Id.* at ECF p. 12. For his requests for relief, Dover seeks written apologies, return of his seized property, and monetary damages. *Id.* at ECF p. 13.

The court also notes that a review of the public docket reveals that the Pennsylvania State Police in Lancaster County arrested Dover on February 15, 2019. *See* Docket, *Commonwealth v. Dover*, No. MJ-2305-CR-50-2019 (Magis. Ct. Lancaster) ("MJD Docket"), *available at* https://ujsportal.pacourts.us/Report/MdjDocketSheet?docketNumber=MJ-02305-CR-0000050-2019&dnh=SiLEFkDn%2BSfu%2BxGTOFRnUA%3D%3D. Trooper Laskoskie is listed on the docket as the arresting officer. *Id.*

A criminal complaint was filed and Dover was charged with carrying a firearm without a license, possession of marijuana and drug paraphernalia, operating a vehicle without rear lights, and driving under the influence of a controlled substance. *Id.* Because he was unable to post bail, Dover remained in custody from February 15, 2019, until February 22, 2019. *Id.*

Dover waived a preliminary hearing and a criminal information was filed in the Court of Common Pleas of Lancaster County on March 27, 2019. *Id.*; Docket, *Commonwealth v. Dover*, No. CP-36-CR-1506-2019 (C.P. Lancaster) ("CP Docket"), *available at* https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-36-CR-0001406-2019&dnh=pPRB98MLg7mzvVxP4At%2BAg%3D%3D. On April 16, 2021, Dover entered into a negotiated guilty plea where he pleaded guilty to the charges of operating a vehicle without rear lights and driving under the influence of a controlled substance. *See* CP Docket. The remaining charges were *nolle prossed*. *Id.* At the same time, Dover received a sentence of a minimum of time served to a maximum of six months' incarceration, and he was to be immediately paroled. *Id.*

## II.   DISCUSSION

### A.   The IFP Application

Regarding applications to proceed *in forma pauperis*,

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein,

6

>without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). This statute

>"is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. *Deutsch*[ *v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in [sic] *forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit. *Neitzke,* 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131–32 (3d Cir. 2008) (per curiam) (footnote omitted).

The litigant seeking to proceed *in forma pauperis* must establish that the litigant is unable to pay the costs of suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989) ("Section 1915 provides that, in order for a court to grant *in forma pauperis* status, the litigant seeking such status must establish that he is unable to pay the costs of his suit."). "In this Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence. [The court must] review the affiant's financial statement, and, if convinced that he or she is unable to pay the court costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Deutsch*, 67 F.3d at 1084 n.5 (internal citations omitted).

Here, after reviewing the IFP Application, it appears that Dover is unable to pay the costs of suit. Therefore, the court will grant him leave to proceed *in forma pauperis*.

**B.      Standard of Review – Screening of Complaint Under 28 U.S.C. § 1915**

Because the court has granted Dover leave to proceed *in forma pauperis*, the court must engage in the second part of the two-part analysis and examine whether the complaint is frivolous,

7

malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490 U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. As for whether a complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant.

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted). In

addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Higgs v. Attorney Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)).

Additionally, the court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint. *Peele v. McLaughlin*, 641 F. App'x 111, 112 (3d Cir. 2016) (per curiam) (explaining that even though "the statute of limitations is an affirmative defense [under Rule 8(c) of the Federal Rules of Civil Procedure], a district court may sua sponte dismiss a complaint under § 1915(e) where the defense is obvious from the complaint and no development of the factual record is required"); *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) ("A complaint may be dismissed *sua sponte* under § 1915 based on an affirmative defense—such as statute of limitations—only when the defense is obvious from the face of the complaint and no further factual record is required to be developed." (citation and internal quotation marks omitted)); *cf. Ball v. Famiglio*, 726 F.3d 448, 459 (3d Cir. 2013) (explaining that if affirmative defense appears on face of complaint, court can dismiss complaint under Rule 12(b)(6)), *abrogated on other grounds by Coleman v. Tollefson*, 575 U.S. 532 (2015).

### C.     Analysis

Dover is seeking relief in this case under 42 U.S.C. § 1983. This statute provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. When attempting to establish a claim under section 1983, a plaintiff must allege and prove that a "person" deprived the plaintiff of a constitutional right while acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."). As discussed below, Dover's section 1983 claims fail for several reasons.

### 1. Section 1983 Claims Against Attorney Tallarico

Dover seeks to raise section 1983 claims against Attorney Tallarico based on his role as the public defender who represented him during the prosecution of his case until Dover elected to cease participating in the ARD program. This federal claim is not plausible because "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) (footnote omitted); *see Saunders v. BB&T Bank*, No. 20-3234, 2021 WL 1696937, at *4 (3d Cir. Apr. 29, 2021) (per curiam) ("Public defenders do not act under color of state law for purposes of § 1983 when they 'perform[] a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.'" (alteration in original)); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."). Because Attorney Tallarico is not a state actor subject to liability under section 1983, Dover has failed to state a claim against him in the SAC.

To the extent that Dover alleges that Attorney Tallarico conspired with Troopers Laskoskie and Gawel to violate his constitutional rights, such a claim fails as well. A private party "who corruptly conspire[s]" with a state official will be considered a state actor under section 1983.

10

*Kitko v. Young*, 575 F. App'x 21, 26 (3d Cir. 2014) (citing *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175–76 (3d Cir. 2010) (internal quotation marks omitted)). Nonetheless, "to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Id.* (quoting *Great W. Mining*, 615 F.3d at 178). "[A] bare assertion of conspiracy will not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Here, the SAC falls well short of alleging a conspiracy of any kind. The SAC simply does not provide any basis for inferring that Attorney Tallarico conspired with Troopers Laskoskie and Gawel, as part of any agreement, to deprive Dover of his rights. Rather, Dover merely presents bare assertions throughout the SAC that the various defendants conspired together, which are insufficient under the *Twombly* standard for finding Attorney Tallarico to be a state actor. *See Kitko*, 575 F. App'x at 26–27 (concluding statement in complaint that defendant acted "in furtherance of a concerted scheme, plan, design and effort" did not sufficiently provide basis for state action).[5]

## 2. Claims That Are Time-Barred

Liberally construing the SAC as this court must do, the court understands Dover as raising several Fourth Amendment claims stemming from the events of February 2019, including allegedly illegal searches and seizures, false arrest, and supervisory liability. *See* 2d Am. Compl. at ECF pp. 2–3, 7–9. It is apparent from the face of the SAC, however, that Dover's claims are time-barred.

---

[5] Similarly, to the extent that the SAC raises claims against Troopers Laskoskie and Gawel for conspiracy, these claims also fail. While Troopers Laskoskie and Gawel are state actors for purposes of section 1983, the SAC presents no factual allegations to present conspiracy claims beyond Dover's belief that the defendants conspired against him in the course of his arrest and criminal proceedings. *See Saunders*, 2021 WL 1696937, at *3 (affirming dismissal of section 1983 conspiracy claims for failure to present factual allegations to support such claims).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Claims under section 1983 for violations of the Fourth Amendment, as with all section 1983 claims, are subject to the applicable state's statute of limitations for personal injury actions. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007) (concluding that statute of limitations for section 1983 actions "is governed by the personal injury tort law of the state where the cause of action arose"). Since Dover's claims arose in Pennsylvania, the court applies Pennsylvania's relevant limitations period, which in this case is two years. *See Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (stating that "[t]he statute of limitations applicable to § 1983 claims in Pennsylvania is two years" (citation omitted)). This two-year limitations period accrues "when a plaintiff has a complete and present cause of action, that is, when [the plaintiff] can file suit and obtain relief." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (quotation marks and citation omitted). In general, this means that the statute of limitations "accrues when the plaintiff knew or should have known of the injury upon which [the plaintiff's] action is based." *Sameric Corp. of Del., Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998).

The limitations period governing claims related to an allegedly illegal search and seizure generally accrues at the time of the search and seizure because at that time, "the plaintiff knew or should have known of the injury upon which [the plaintiff's] action is based." *Id.*; *see also Jackson v. City of Erie Police Dep't*, 570 F. App'x 112, 114 (3d Cir. 2014) (per curiam) ("[T]he statute of limitations for claims of wrongful searches and seizures would have begun to run at the time of the searches and seizures . . . ."). Here, the alleged illegal searches and seizures occurred on February 15, 2019, after Troopers Laskoskie and Gawel stopped Dover's vehicle. Dover would or, at a minimum, should have been aware of his injuries from the alleged illegal searches and seizures

at that time. Thus, his claims accrued more than two years before the filing of his initial complaint on May 26, 2021. Accordingly, the court will dismiss any claims based on the alleged illegal searches and seizures as time-barred.[6]

As for Dover's section 1983 claim for false arrest, the limitations period governing claims of false arrest without a warrant accrues at the time the plaintiff became detained pursuant to legal process. *See Wallace*, 549 U.S. at 397 ("[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."); *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998) ("A claim for false arrest, unlike a claim for malicious prosecution, covers damages only for the time of detention until the issuance of process or arraignment, and not more."). As the court explained earlier, the public docket reflects (and the SAC confirms) that Dover was arrested on February 15, 2019, and a criminal complaint was filed at that time. *See* MJD Docket. The public docket also reflects that a criminal information was filed on March 27, 2019, binding over the charges for court. *See* CP Docket. Because the allegations in the SAC show that Dover was aware of the events giving rise to his false arrest claims more than two years before he filed this lawsuit on May 26, 2021, the court will dismiss with prejudice any claims based on an alleged false arrest as time-barred.

To the extent Dover seeks to raise section 1983 claims against Troopers Laskoskie and Gawel and the John Doe defendant pertaining to his treatment while at the Lancaster barracks after

---

[6] There is no basis for tolling here as the SAC makes clear that Dover knew or should have known of the events giving rise to his claims and his related injuries at the time the claims accrued and there is no suggestion (via specific factual allegations) that Dover was actively misled by a defendant about his claim, an extraordinary circumstance prevented him from filing it timely, or the claim was timely presented in an incorrect forum. *See Lloyd v. Ocean Twp. Counsel*, No. 20-3320, 2021 WL 1608553, at *2 (3d Cir. Apr. 26, 2021) (per curiam) (explaining that equitable tolling for federal civil rights claim "is generally appropriate where: (1) a defendant actively misleads a plaintiff regarding a cause of action; (2) a plaintiff has been prevented from asserting a claim as a result of other extraordinary circumstances; or (3) a plaintiff has timely asserted her claims, but in the wrong forum" (citing *Lake v. Arnold*, 232 F.3d 360, 370 n.9 (3d Cir. 2000))).

his arrest in February 2019, such claims are also time-barred. *See* 2d Am. Compl. at ECF pp. 9, 13.[7] He alleges that his rights were violated when a non-defendant female State Trooper recorded him on cellphone video and "during a body search a trooper put his hand on Plaintiffs [sic] gentiles [sic] and smiled, called Plaintiff a nobody." *Id.* at ECF p. 9. Dover further asserts that the John Doe defendant was negligent in supervising his subordinates during his "processing and time at the barracks." *Id.* at ECF pp. 4, 8–11. These allegations clearly demonstrate that Dover knew or had reason to know of the injury that constitutes the basis of these claims more than two years before he filed this lawsuit on May 26, 2021. Therefore, the court must also dismiss these claims as time-barred.

### 3. Claims That Are *Heck*-Barred

Based on the allegations therein, the court construes the SAC as presenting claims for malicious prosecution against Troopers Laskoskie and Gawel based on their charging him with several crimes in the wake of his February 2019 arrest, as well as claims that these defendants conspired to secure his unlawful conviction. *See generally* 2d Am. Compl. However, these claims may not proceed at this time.

In this regard,

> to recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

---

[7] Dover titles two counts of his SAC as "Violation of Equal Protection." 2d Am. Compl. at ECF pp. 8–10. Although he uses the term "equal protection," the SAC does not plausibly allege an equal protection violation. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal quotation and citation omitted). In describing the event, Dover claims that he is a "68 yr. old man and was singled out and treated differently because of [hi]s vulnerable situation." 2d Am. Compl. at ECF p. 9. He makes no allegation how he was treated differently from anyone else.

*Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (footnote and citation omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)). "Thus, when a [plaintiff] seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487.

Here, a judgment in favor of Dover on the malicious prosecution and related conspiracy claims would imply the invalidity of his conviction. It is evident that Dover's state criminal prosecution did not terminate favorably for him because records show that his criminal charges were resolved by way of a negotiated guilty plea on April 16, 2021. *See* CP Docket. Dover also does not allege anything other than he entered into a guilty plea. *See* 2d Am. Compl. at ECF p. 5. Thus, his convictions remain intact and have not been invalidated.[8] As a result, Dover's claims are

---

[8] To satisfy the favorable termination element of a malicious prosecution claim, "a prior criminal case must have been disposed of in a way that indicates the innocence of the accused." *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009) (en banc). "A malicious prosecution claim cannot be predicated on an underlying criminal proceeding which terminated in a manner not indicative of the innocence of the accused." *Id.* An acquittal on one charge is not a favorable termination when the plaintiff was convicted of a different crime arising from the same underlying facts during the same criminal prosecution. *Id.* at 188. To determine whether the plaintiff has established the favorable determination element, the court must consider whether "the circumstances—both the offenses as stated in the statute and the underlying facts of the case—indicate that the judgment as a whole" reflects the plaintiff's innocence. *Id.* Here, the public record shows that Dover entered into a negotiated guilty plea and that he was found guilty on certain charges while others were *nolle prossed*. *See* CP Docket. Nothing on the state court docket indicates that Dover's criminal proceeding terminated in a manner indicative of his innocence. *See Malcomb v. McKean*, 535 F. App'x 184, 187 (3d Cir. 2013) ("A nolle prosequi disposition is a favorable termination unless the accused has entered into a compromise or surrendered something of value to obtain that outcome."); *Hilfirty v. Shipman*, 91 F.3d 573, 579 (3d Cir. 1996) ("The basic premise for this rule is that, unlike a situation where the prosecution seeks a grant of nolle prosequi 'because of insufficient evidence,' dismissal of charges as a result of compromise is not an indication that the accused is actually innocent of the crimes charged."), *overruled on other grounds by Merkle v. Upper Dublin Sch. Dist.*, 211

not cognizable in a civil rights action at this time. *See Nash v. Kenney*, 784 F. App'x 54, 57 (3d Cir. 2019) (per curiam) ("Nash's malicious-prosecution and speedy-trial claims—which challenge his post-arraignment detainment—are barred by the favorable-termination rule of *Heck*[.]"); *Ebuzor-Onayemi v. Union Cnty. Police Dep't*, 736 F. App'x 44, 46 (3d Cir. 2018) (per curiam) (affirming district court's *sua sponte* dismissal of section 1983 conspiracy claim as barred by *Heck*'s favorable-termination rule); *Floyd v. Attorney Gen. of Pa.*, 722 F. App'x 112, 114 (3d Cir. 2018) (per curiam) ("Because Floyd's malicious prosecution and fabrication of evidence claims do not accrue until the criminal proceedings have terminated in Floyd's favor, and Floyd has not demonstrated as much, they are barred by *Heck*."). Accordingly, the court will dismiss any malicious prosecution claims without prejudice to Dover filing a new case if his convictions are first invalidated.

### 4. Claims Regarding Seizure of Personal Property

In his requests for relief, Dover seeks the return of property seized by the Pennsylvania State Police. *See* 2d Am. Compl. at ECF p. 13. In connection with this specific request for relief, the court construes the SAC as alleging that Dover's procedural due process rights pursuant to the Fourteenth Amendment were violated when the property was seized, but not returned. To state a plausible Fourteenth Amendment due process claim, a plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Rosado v. City of Coatesville*, Civ. A. No. 19-2426, 2020 WL 1508351, at *3 (E.D. Pa. Mar. 30, 2020) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006)).

---

F.3d 782, 791 (3d Cir. 2000); *see also Mickell v. Police Dep't of Scranton*, Civ. A. No. 16-291, 2017 WL 4532160, at *4 (M.D. Pa. Mar. 10, 2017) (concluding *Heck* barred plaintiff's claims in case where plaintiff pleaded guilty to certain offenses, while others were *nolle prossed*), *report and recommendation adopted*, Civ. A. No. 16-291, 2017 WL 4516748 (M.D. Pa. Oct. 10, 2017).

"If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what [the plaintiff] wants." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). Moreover, "if negligent deprivations of property do not violate the Due Process Clause because predeprivation process is impracticable, it follows that intentional deprivations do not violate that Clause provided, of course, that adequate state post-deprivation remedies are available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) (per curiam) (quoting *Hudson*, 468 U.S. at 533).

In Pennsylvania, "[a] person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of property on the ground that [the aggrieved person] is entitled to lawful possession thereof." Pa. R. Crim. P. 588(A). This motion must be "filed in the Court of Common Pleas for the judicial district in which the property was seized." *Id.* Here, Dover does not indicate in the SAC that he filed a motion for return of his property in state court. Furthermore, he does not challenge the adequacy of Pennsylvania's procedure for the return of property. Consequently, Dover has failed to state a claim for relief pursuant to the Fourteenth Amendment's Due Process Clause. *See Gulley v. Haymaker*, Civ. A. No. 06-131J, 2009 WL 763549, at *12 (W.D. Pa. Mar. 23, 2009) (adopting report and recommendation that court, *inter alia*, grant summary judgment in favor of defendants as to plaintiff's Fourteenth Amendment Due Process Clause claim because plaintiff failed "to avail[] himself of the procedures set forth by the Pennsylvania Criminal Rules, i.e., [p]laintiff has not filed a motion for the return of his property, nor does [p]laintiff challenge Pennsylvania's procedure for the return of property"). The court will therefore dismiss these claims without prejudice to Dover's right to pursue the return of his property in state court. *See Scott v. Tonkin*, No. 1:20-cv-2067, 2020 WL 6940828, at *4 (M.D. Pa.

17

Nov. 25, 2020) (dismissing due process claim seeking return of property seized by Pennsylvania State Police without prejudice to plaintiff's right to seek return of property in state court).

### III.     CONCLUSION

For the foregoing reasons, the court will grant Dover leave to proceed *in forma pauperis* and dismiss his SAC in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The court dismisses the claims which are exclusively barred by *Heck* without prejudice to Dover reasserting those claims if his conviction is ever reversed, vacated, or otherwise invalidated. Additionally, the court dismisses Dover's due process claims seeking the return of his property without prejudice to his right to pursue the return of his property in state court.

The court will dismiss all remaining claims with prejudice because Dover cannot cure the legal deficiencies in those claims. As such, the court will not give him leave to file a third amended complaint because amendment would be futile. *See Vaughn v. Markey*, 813 F. App'x 832, 833 (3d Cir. 2020) (per curiam) (affirming dismissal of complaint without leave to amend because amendment would have been futile as claims were time-barred); *see also Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does *not* seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile.").

The court will enter a separate order.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.